UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BERNARD THOMAS,                         :
                                        :
                    Petitioner,         :        03 Civ. 1443 (DLC)
                                        :
        -v-                             :        OPINION AND ORDER
                                        :
THE PEOPLE OF THE STATE OF NEW YORK,    :
                                        :
                    Respondent.         :
----------------------------------------X

Appearances:

Pro Se Petitioner:
Bernard Thomas
99-A-2004
P.O. Box 1245
Fishkill Correctional Facility
Beacon, NY  12508

For Respondent:
Luke Martland
Kimberly Morgan
Office of the Attorney General of the State of New York
120 Broadway
New York, NY 10271


DENISE COTE, District Judge:

     Bernard Thomas ("Thomas") brings this petition for a writ

of habeas corpus pursuant to Title 28, United States Code,

Section 2254, following his conviction at trial in 1999 on

several charges arising from his 1998 shooting of Steven Rivera

("Rivera").  Thomas contends that he was framed by the

eyewitnesses to the crime because they were angry at him over

his cooperation with the police and anti-drug efforts.  On

January 30, 2007, Magistrate Judge Frank Maas issued a report ("Report") recommending that the petition be denied.  Thomas has objected to the Report.  For the following reasons, the Report is adopted, and the petition is denied.

### BACKGROUND

As described in detail in the Report, the evidence at trial established that on April 9, 1998, Bernice Walker ("Walker") accused Thomas, who is also known was Jabbar, of stealing her cell phone.  Later that day, Thomas went to Walker's apartment, where the argument over the cell phone continued.  Rivera was also in the apartment and knocked a beer out of Thomas's hand, telling him to go get the telephone.  Within minutes Rudy Holloman ("Holloman"), a friend of Thomas, and then Thomas returned to the apartment.  Holloman and Thomas drew weapons, pointing them at Frank Johnson ("Johnson"), a friend of Walker's who was also in the apartment, and Rivera.  Thomas again denied taking the cell phone, but said he was going to take money. Thomas took $100 from Johnson and fired his gun twice.  The second time the bullet went through a refrigerator and hit Rivera, lodging in his lung.

Walker, Rivera and Johnson testified for the prosecution at trial, and each identified Thomas as the shooter.  Detective Thomas Trezza ("Trezza") testified about Rivera's pretrial photo

2

identifications of Thomas. Other officers described recovering the bullet from Walker's apartment, identified it as a .38 caliber bullet, and reported overhearing Thomas's post-arrest statement to his wife, "You're going to be my alibi that I was with you."

Thomas testified as the sole defense witness. He testified that he had a number of drug-related convictions before 1997 but had begun an anti-drug crusade since that time. He accused Walker and Johnson of running a drug spot and being angry at him for his anti-drug efforts. Thomas asserted that this was the reason that they had falsely accused him of the shooting.

On cross-examination, Thomas testified that he had recently joined the "Harlem Block Association." He admitted to having been arrested on a criminal trespass charge on May 3, 1998 at a building next to Walker's building; May 3 was less than a month after the shooting and just one day prior to Thomas's arrest for the shooting. Thomas claimed that after his arrest on May 3 he went to the precinct with the officers who arrested him, and then returned with them to help them get into the building where they had arrested him. Thomas admitted that he had not told the police on May 3 that he was part of a block association, and explained that his grand jury testimony to the contrary was mistaken.

In rebuttal, one of the police officers who arrested Thomas on May 3 testified that he had seen Thomas talk to numerous persons who were going into the building where Thomas was arrested and where drugs were sold. After arresting Thomas on a criminal trespass charge, Thomas did not claim to be a member of a block association or assert that he had been fighting drugs, and did not escort the police to the building.

The jury convicted Thomas of Reckless Endangerment in the First Degree, two counts of Robbery in the First Degree and one count of Assault in the First Degree based on a depraved indifference theory. It acquitted him of Attempted Assault in the First Degree, Attempted Murder in the Second Degree, and Assault in the First Degree through use of a deadly weapon.

On March 9, 1999, Thomas was sentenced as a second felony offender to concurrent sixteen-year prison terms, and concurrent three and one-half to seven-year prison terms. On January 20, 2000, Thomas moved pro se to vacate the judgment pursuant to Section 440.10 of the New York Criminal Procedure Law ("Section 440.10" and "First 440 Motion"). The trial judge denied the motion on April 13, and on July 13, the Appellate Division denied leave to appeal. On October 20, Thomas's appellate counsel filed the defendant's brief on his direct appeal. On October 16, 2001, the Appellate Division unanimously affirmed

4

the conviction.  71 N.Y.S.2d 32 (1st Dep't 2001).  Leave to appeal to the Court of Appeals was denied on December 5.

On January 18, 2002, Thomas filed a second pro se Section 440.10 motion ("Second 440 Motion").  On May 30, that motion was denied, and on December 2, leave to appeal was denied.

On November 12, 2002, Thomas filed a pro se writ of error coram nobis.  This motion was denied on July 31, 2003, and leave to appeal was denied on December 2.

Thomas filed this petition for a writ of habeas corpus on February 6, 2003.  He quickly requested a stay to pursue further collateral review in state court.  The request was granted on March 24.  On June 16, 2003, Thomas filed a third Section 440.10 motion ("Third 440 Motion").  The motion was denied on November 26.  Leave to appeal was denied on February 28, 2004.  The stay of this petition was lifted on June 1, and Thomas submitted an amended petition at that time, which was recently docketed by the Magistrate Judge.

The petition was referred to the Magistrate Judge on June 2, 2004, and as noted, the Report issued on January 30, 2007. Thomas was granted an extension of the time to file objections, and his objections to the Report were received on March 30.[1]

---

[1] In a cover letter of March 26, Thomas requests an opportunity to supplement objections to the Report's analysis of his ineffective assistance of counsel claim.  Thomas's objections run for twenty-seven pages.  Given that he had two months to

5

## DISCUSSION

The Report identifies sixteen different claims or categories of claims in the petition. It recommends rejection of each of them. The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a de novo determination of the portions of the report to which petitioner objects. 28 U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions. Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an

---

prepare his objections, has made extensive objections, and has not identified any specific event that prevented him from carefully reviewing and responding to the Report within the two-month period, a further extension is unnecessary.

unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. §§
2254(d)(1), (d)(2).

In his objections, Thomas asserts that he was framed by
drug dealers, who were angry at him because he had become a
practicing Muslim, had rejected his past lifestyle, and was
conducting anti-drug activities. Thomas asserts that the ADA
who questioned him in the Grand Jury would not let him explain
his defense fully to the grand jurors and railroaded him.
Thomas specifically objects that the Report erred in its
analysis of four of his claims: the claim that his trial
counsel was ineffective; that the prosecutor violated his rights
by cross-examining him at trial about his statement after his
arrest on May 3, 1998, that the trial court erred in dismissing
a juror, and that the trial court erred in failing to inspect
grand jury minutes. Each of the claims addressed in the Report
is described below, with particular attention given to those
that are the subject of Thomas's objections.

A. Procedural Default

Although the State argued that several of the claims were
unexhausted, the Report found it unnecessary to reach that
issue. Instead, the Report examined whether those claims were
also subject to denial on the ground of procedural default since

7

they were denied by a state court on an adequate and independent

state ground and Thomas was not able to demonstrate cause or

actual prejudice for the default or that there had been a

fundamental miscarriage of justice.

The procedural defaults rest on the following chronology.

Applying Section 440.10 and its requirement that issues must be

raised on direct appeal when sufficient facts appear on the

record, the state court addressing the First 440 Motion had

denied the claims that the photo array shown to Rivera had been

unduly suggestive; and that the trial court should have

conducted an independent source hearing on Walker's

identification of Thomas.[2]  Applying New York's contemporaneous

objection rule, the Appellate Division rejected Thomas's claims

that a juror had been discharged without adequate questioning;

and that there was an infirmity with the verdict sheet.

Applying Section 440.10 and its requirement that issues be

raised on direct appeal or in an initial Section 440.10 motion,

the state court addressing the Third 440 Motion denied claims

that the prosecutor's opening and closing statements constituted

misconduct; that the prosecutor withheld exculpatory evidence;

and that Thomas was not given proper notice of the photo array.

---

[2] As described below, Thomas now seeks to assert this latter
claim as an ineffective-assistance-of-counsel claim.

8

Thomas attempted to show good cause and actual innocence in litigating the procedural default issues before the Magistrate Judge. The Report rejected those attempts on the grounds that the good cause proffer was conclusory and that the two witness statements purporting to show actual innocence were not exculpatory. The statements had been presented to the state court with the Third 440 Motion and confirm that Thomas was one of two armed men in the apartment, that he stole $100 from Johnson at gunpoint, and that he then shot Rivera. The Report also pointed out that the statements were not newly discovered evidence since they were taken by a defense investigator.[3] In his objections, Thomas explicitly abandons all of these procedurally defaulted claims except those which he seeks to assert now as ineffective-assistance-of-counsel claims.

B. Grand Jury Proceedings

The petition asserts several errors in connection with the conduct of the grand jury proceedings and the trial court's failure to inspect the grand jury minutes. As explained in the Report, Thomas's conviction renders any of these claims harmless.

---

[3] The Report explains that they were taken by an investigator retained by Thomas's first defense attorney and Thomas has not shown that his second attorney, who was his trial counsel, was unaware of them.

In his objections, Thomas asserts that the Report erred in its recitation of the law on which it relied to reject Thomas's grand jury claim.  Thomas points out that the state court decision reviewed in Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989), actually examined the grand jury minutes before rejecting the defendant's challenge to the indictment.  Thomas asserts that the trial judge in his case ordered the inspection of the minutes, but then failed actually to inspect them to determine whether sufficient evidence had been presented to the grand jury to support an indictment.  According to Thomas, at trial, seven of the fourteen counts in the indictment were dismissed.  Thomas claims that "had trial counsel . . . pursued this" issue earlier, Thomas would have been offered a more acceptable plea bargain, which he "most likely would have accepted" even though he is innocent.  To the extent that the petition claims that procedural errors or insufficient evidence tainted the grand jury proceedings and the subsequent indictment, such errors are not cognizable on a collateral attack following a guilty verdict.  See United States v. Mechanik, 475 U.S. 66, 70 (1986); Lopez, 865 F.2d at 32.

C. Brady Violations

The petition presents three claims that the State violated its obligations pursuant to Brady v. Maryland, 373 U.S. 83

10

(1963). It asserts that the prosecutor failed to produce a ballistics report that would have shown that Rivera was not shot with a .38 caliber firearm; to disclose that Rivera had received a favorable sentence in exchange for trial testimony against Thomas; and to produce certain police documents. The Report rejects each of these claims for Thomas's failure to show that a violation occurred or that the alleged violation would have been material to the outcome of the trial.

Thomas makes a single objection to the Report's analysis of this claim. He contends that his first attorney Lisa Williams ("Williams") was aware of a plea agreement between the prosecutor and Rivera and that his trial counsel must not have adequately consulted with Williams or he would have used the plea agreement to cross examine Rivera at trial. This objection does not assert any claim that the State violated Brady or its companion, Giglio v. United States, 405 U.S. 150 (1972), by failing to disclose material impeachment information. The substance of this objection will be addressed in the context of the ineffectiveness claim.

D. Discharge of Juror

During the trial, a juror was dismissed when she appeared over four hours late for court one day. Her responses to the court's questions led the court to question her mental

11

competence.  The Appellate Division found that the discharge was
not an abuse of discretion.  It stated that "the juror's mental
competence was seriously drawn into question by her confused and
contradictory responses to the court's extensive inquiry about
her failure to locate the courthouse despite having reported
there on successive dates and her encounter with another juror
during [the] lunch recess."  Thomas, 731 N.Y.S. 2d at 33.  The
Report found that the ruling was not an unreasonable application
of clearly established federal law.

Thomas objects that, while the juror may have given what
appeared to be contradictory responses, she was not mentally
incompetent since she had already made it to the courthouse on
three or four other days and many persons get lost in New York
City.  He argues that the factual record is not sufficient to
find that she was incapable of being impartial.

Courts have "broad discretion" to replace a juror before
the jury retires "if there is reasonable cause to do so."
United States v. Purdy, 144 F.3d 241, 247 (2d Cir. 1998)
(federal prosecution); see also  United States v. Agramonte, 980
F.2d 847, 850 (2d Cir. 1992); United States v. Floyd, 496 F.2d
982, 990 (2d Cir. 1974).  In light of this flexible standard,
Thomas's objection that "it is quite common that . . . a juror
could get lost" and that it was therefore "error" to dismiss the
juror in question is not sufficient to demonstrate that the

12

Appellate Division's conclusion on this issue was legally or factually unreasonable.  28 U.S.C. §§ 2254(d)(1),(d)(2).

E. May 3, 1998 Post-Arrest Statements and Admission

The petition asserts that the trial court made certain evidentiary errors in connection with the admission at trial of evidence of his statements and activities following his May 3, 1998 arrest.  Some background is necessary to place this issue in context.  At trial, Thomas asserted that he had been framed by the eyewitnesses to the shooting because he had opposed the drug dealing in which Walker and Johnson were engaged.  On cross-examination, Thomas asserted that he was affiliated with the Harlem Block Association.  He admitted that he had been arrested on a criminal trespass charge on May 3, 1998, the day before he was arrested for the shooting and robbery.  The May 3 arrest took place at the building next to Walker's building, where the shooting occurred.  Thomas admitted that he had not told the police about his membership in the association on May 3, but asserted that after the May 3 arrest he had told the police that he had been at the building to dissuade people from buying drugs and had accompanied the arresting officers from the precinct and back to the area to help them gain entry into the building where he had just been arrested.  Thomas conceded that he had told the grand jury that he had informed the arresting

13

officers on May 3 about the association, but attributed this error in his grand jury testimony to confusion.

The petition asserts that Thomas was denied a fair trial because the prosecutor cross-examined him regarding his failure to tell arresting officers that he was a member of the association following his May 3 arrest, and because the court allowed rebuttal testimony from a police officer that Thomas neither told the police about the association or any anti-drug efforts in which he was engaged nor escorted officers back to the building to help them gain entry.

The Appellate Division reached this claim in affirming Thomas's conviction on direct appeal. People v. Thomas, 731 N.Y.S.2d 32 (1st Dep't 2001). It found that the cross examination and rebuttal evidence were properly received at trial because Thomas had made an exculpatory statement following the May 3 arrest but had said nothing about being a member of an anti-drug block association and because Thomas had placed the events surrounding his criminal trespass arrest in issue.

The Report found that there was nothing unfair about inquiring into Thomas's odd failure to tell the officers about the association on May 3 despite his purported willingness to speak to them about his anti-drug efforts. The Report relied on

14

Anderson v. Charles, 447 U.S. 404, 408 (1980),[4] and Bradley v. Meachum, 918 F.2d 338, 342 (2d Cir. 1990), to conclude that no violation had occurred because Thomas had not invoked his Miranda rights to remain silent after his May 3 arrest. Moreover, the cross-examination and rebuttal testimony went to the crux of Thomas's testimony on direct examination, that he had been framed because of his anti-drug activities.   The Report also characterized Thomas's defense as farfetched and relied on the other evidence of his guilt, which it described as "considerable," to conclude that Thomas had not shown that any evidentiary error was material.

In his objections Thomas shifts gears.   He does not assert any violation of his constitutional right to remain silent. Instead, he contends that the events of May 3 were irrelevant to the charges and that it was error to allow the cross examination and rebuttal testimony on an incident that occurred on another date.   He argues that the State's summation argument and its emphasis on this evidence confirm the materiality of this error.

_____

[4] Thomas asserts that the Report probably intended to cite Jenkins v. Anderson, 447 U.S. 231 (1980), instead of Anderson v. Charles.   The language quoted by Thomas is, as stated in the Report, from Charles, 447 U.S. at 408 ("Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements.").   In Jenkins, the Court held that "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."   447 U.S. at 238.

15

Assuming that this refashioned argument is exhausted and preserved, it may be rejected. As the Appellate Division observed, Thomas's defense, as presented in his direct testimony, opened the door to this cross-examination by placing the events surrounding his criminal trespass at issue. Thomas, 731 N.Y.S.2d at 33. Because "federal habeas corpus relief does not lie for errors of state law," Lewis v. Jeffers, 497 U.S. 764, 780 (1990), a category which "necessarily includes erroneous evidentiary rulings," Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006), Thomas is not entitled to habeas relief based on allegedly mistaken evidentiary rulings unless the errors identified "violated [his] federal constitutional rights." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2254(d)(1); Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004). Thomas has not shown that his federal constitutional rights were implicated by the trial court's ruling regarding this line of cross-examination, and thus this claim must fail.

F. Ineffectiveness of Trial Counsel

Thomas was represented during much of a pre-trial suppression hearing and at trial and sentencing by Kenneth W. Salaway ("Salaway"), his second assigned counsel. The petition asserts that Salaway provided ineffective assistance when he

16

failed to seek a continuance to prepare for the suppression hearing; to object to the admission of photo arrays or request a probable cause or independent source hearing; to consult with Thomas and his first assigned counsel; to investigate pretrial discovery materials; to obtain a pretrial ruling on the motion to inspect grand jury minutes; to object to the prosecutor's misconduct before the grand jury; to investigate Rivera adequately; to call character witnesses to establish that he preached anti-drug messages; to call his girlfriend as a trial witness; to object to the jury charge's omission of any reference to "another participant in the crime" in the description of the First Degree Robbery charge; and to obtain a presentence report.

The Report found these assertions to be without merit.  It examined each of the assertions carefully and found them to be speculative, based on mistaken assumptions or errors of law, or unsupported.

In his objections, Thomas asserts ineffective assistance on four grounds.  In making some of these points, Thomas seeks to resurrect claims that are procedurally barred from review by recasting them as ineffective assistance claims.  This approach misconstrues the requirements for bringing claims through a habeas petition.  It ignores both the exhaustion requirement and the statute of limitations for habeas claims, as well as the

17

requirement that objections be addressed to errors or omissions in the Report. Nonetheless, for the following reasons, each of the four prongs of the ineffective-assistance-of-trial-counsel claim may also be rejected on the merits.

"[I]n order to prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006), cert. denied, 127 S.Ct. 1306 (Feb. 20, 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The performance inquiry examines the reasonableness of counsel's actions under "all the circumstances," Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (citing Strickland, 466 U.S. at 688), and from the perspective of counsel at the time, id. (citing Rompilla v. Beard, 545 U.S. 374, 389 (2005); Strickland, 466 U.S. at 689). Counsel is "strongly presumed" to have exercised reasonable judgment in all significant decisions. Id. (citing Strickland, 466 U.S. at 690). Prejudice forms the second half of an ineffective assistance claim. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (citing Strickland, 466 U.S. at 688, 694).

18

First, Thomas contends that Salaway did not "protect the record" or make an oral argument at the close of the pretrial suppression hearings.  Thomas does not identify what motion or argument Salaway should have made at that time that would have made a difference to the state court's detailed written ruling on the admissibility of the eyewitness identification testimony, or indicate in what way the Report erred in rejecting Thomas's ineffective assistance claims that concern the pretrial hearing.

Thomas next contends that if his trial counsel had pressed the trial court to review the grand jury minutes and if that review had led to the pretrial dismissal of seven counts of the indictment, he might have been offered and pleaded guilty pursuant to a more favorable plea bargain.  Thomas does not address any of the Report's discussion of this issue, including his failure to show that there was in fact any defect in the grand jury presentation.  As a result, it is unnecessary to examine as well whether Thomas's identification of prejudice is too speculative to support an ineffective assistance of counsel claim.  See Strickland, 466 U.S. at 694.

Thomas speculates that the ADA offered Rivera leniency in return for testimony against Thomas.  Thomas contends that in November 1998 the ADA learned that Rivera had been arrested for a sale of a controlled substance and promised him a one-year sentence if he would testify against Thomas.  Thomas asserts

that his attorney should have but did not inquire whether Rivera had been promised a more lenient sentence in return for his testimony.[5]  Thomas does not grapple with the Report's discussion of the alleged promise of leniency to Rivera.  Simply put, there is no evidence that any such promise was made, and Thomas's counsel engaged in any event in an extensive impeachment of Rivera with other lines of examination.

Finally, Thomas contends that his trial counsel failed to insist on a further identification hearing on the ground that the State had not offered sufficient proof that Walker already knew and was familiar with Thomas at the time police showed her photographs of him.  This is a refashioned claim, and differs substantially from the claim presented in the petition and addressed in the Report.  Nonetheless, since Thomas does not deny that Walker did know him as of the time of the shooting, it is unnecessary to address this altered claim at length.  It bears noting, however, that the state court did conduct hearings on the pretrial identifications and did issue a written ruling regarding their admissibility.  Moreover, Thomas himself asserts that the trial court refused to allow evidence at trial of Walker's pretrial identifications of Thomas, although it did

---

[5] This is not a claim that Thomas has previously pursued as an ineffective assistance claim.  It was presented in his petition as a Brady claim.  The ineffectiveness claim had rested on the accusation that Salaway failed to uncover secret compensation that had been paid to Rivera for testifying.

permit her to make an in-court identification of him.  It was
Thomas's theory of defense at trial, of course, that Walker and
Rivera did in fact know him and had framed him because of their
animus against him.  In sum, even if this claim is preserved for
review, Thomas has not shown that he has suffered any prejudice
from counsel's alleged failure to pursue further hearings
regarding Walker's ability reliably to identify Thomas at trial.

G. Ineffectiveness of Appellate Counsel

        Thomas contends that his appellate counsel was also
ineffective.  He asserts that she failed to consolidate his
First 440 Motion and his direct appeal; to assert ineffective
assistance of trial counsel; and to assert Brady violations,
grand jury violations, the suggestiveness of the photo arrays,
and Rosario violations.  The Report rejected each of these
contentions on the ground that there was no factual or legal
support for setting aside the conviction based on these
assertions.   Thomas does not object to this portion of the
Report.  To the extent that his objections discuss some of these
issues in the context of a claimed substantive violation and
could be said to assert as well an objection to the Report's
recommendation that the ineffective assistance of appellate
counsel be denied, these objections must be rejected for the
reasons already discussed.

Having reviewed the Report with care, there is no facial error in the conclusions reached by the Report. For the reasons given in this Opinion, Thomas's objections to the Report are denied following a de novo review of his claims.

CONCLUSION

Thomas's petition is denied. No certificate of appealability shall issue. Thomas has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). Moreover, any appeal from this order would not be taken in good faith. See 28 U.S.C. § 1915(a)(3); Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss the petition.

SO ORDERED:

Dated:    New York, New York
          August 29, 2007

_____
DENISE COTE
United States District Judge

22

COPIES SENT TO:


Bernard Thomas
99-A-2004
P.O. Box 1245
Fishkill Correctional Facility
Beacon, NY 12508

Luke Martland
Kimberly Morgan
Office of the New York State
    Attorney General
120 Broadway
New York, NY   10271